# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MICHAEL E. SILUK, JR.,** : | Civil No. 1:11-CV-1654 |
| : | |
| **Plaintiff,** : | |
| : | (Judge Conner) |
| v. : | |
| : | (Magistrate Judge Carlson) |
| **CATHERINE MERWIN, Director** : | |
| **of Perry County Domestic Relations** : | |
| **Section** : | |
| : | |
| **Defendant.** : | |

## REPORT AND RECOMMENDATION

### I.   Statement of Facts and of the Case

This is a *pro se* civil rights complaint brought by Michael Siluk, a convicted murderer, arising out of a decade-old child support dispute relating to Siluk's efforts to recover a 2002 federal income tax refund in the amount of $1,300 that Siluk contends was wrongfully applied by the state Department of Public Welfare (DPW) to a child support arrearage that Siluk was alleged to have owed. For the past ten years Siluk has litigated this matter vigorously in state courts, seeking to recover this $1,300, not from the Department of Public Welfare, which applied these funds against the alleged arrearage, but rather demanding that the Perry County Domestic Relations

Section, a separate government agency, and its director, Catherine Merwin, reimburse this tax refund to him.

After what has been aptly described as "a plethora of cases" Siluk's efforts to recover this money from Ms. Merwin and the Domestic Relations Section in Perry County were definitively rejected by the state courts in October 2010. Undeterred by this state court ruling, Siluk now brings this civil action in federal court, inviting this court to review and reverse the state court judgments obtained over this decade of litigation. For the reasons set forth below, it is recommended that this court decline Siluk's invitation.

The history of Siluk's long quest for the recovery of this tax refund was succinctly summarized by the Pennsylvania Superior Court in October 2010, when it denied Siluk's demands that Ms. Merwin and the Perry County Domestic Relations Office repay this money. At that time the Superior Court explained that:

> [I]n 2000, [Siluk] was ordered to provide support for his two children who were receiving benefits from the Pennsylvania Department of Public Welfare ("DPW"). In 2002, after [Siluk] failed to provide support, the Internal Revenue Service intercepted his income tax refund which was forwarded to DPW to help defray costs incurred via welfare benefits for [Siluk's] children. [Siluk] subsequently requested that his child support obligations be suspended retroactive to his September 16, 2001 date of incarceration on murder charges. On March 16, 2005, the trial court concluded that [Siluk] was entitled to reimbursement for support amounts totaling $1,317.87 and issued an order directing the Perry County Domestic Relations Section ("DRS") to contact DPW to obtain [Siluk's] refund in that amount. DRS was not successful in its attempts

> to obtain a refund. Thereafter, [Siluk] filed a plethora of cases and pleadings which all stem from his attempt to obtain the $1,317.87 refund. On July 29, 2008, the trial court issued an order dismissing [Siluk's] prior cases and pleadings with prejudice, ordering Appellant to refrain from filing any further documents in said prior cases, and advising that any future filings would result in contempt proceedings against [Siluk]. [Siluk's] appeal followed.

(Doc. 2, pp.24-25.)

The Superior Court rejected this appeal, and Siluk's efforts to hold Ms. Merwin and the Domestic Relations Section in Perry County financially responsible for the actions of the state Department of Public Welfare, observing that in the course of this state litigation:

> [I]t was determined that DRS had complied with the court's order to contact DPW and to take steps to obtain a refund on behalf of [Siluk] . . . . This Court dispositively determined that although [Siluk] had not obtained his refund, it was through no fault of DRS or any employees of Perry County. Thus, the prior determination is final and conclusive as to [Siluk's] assertions that he was deprived of property without due process of law and that DRS is in "clear violation of court orders."

(Id., p. 28.)

Given these prior rulings which rebuffed Siluk's efforts to obtain this money from Merwin and the Perry County Domestic Relations Section, the Superior Court denied Siluk's appeal, and affirmed these prior state court judgments stating, "this Court's ruling to affirm the trial court on [Siluk's] issue regarding the refund is the law

of the case, and we will not revisit that claim . . . . While we understand [Siluk's] frustration, no relief can be afforded. Order affirmed." (Id., p.29.)

Undeterred, by this October 2010 ruling of the Pennsylvania Superior Court, Siluk now comes to this court with a *pro se* complaint, "to Recover a Sum Certain", which, once again, seeks to recover these funds from Ms. Merwin and the Perry County Domestic Relations Section.(Doc. 1.) Thus, Siluk's complaint expressly invites us to review, and reverse, the judgment of the Pennsylvania Superior Court affirming the decisions of the Court of Common Pleas of Perry County in this case.

Along with his complaint Mr. Siluk filed a motion for leave to proceed *in forma pauperis*. (Doc. 6.) For the reasons set forth below, we will GRANT this motion for leave to proceed *in forma pauperis* (Doc. 6) but recommend that the Court dismiss Siluk's complaint for failure to state a claim upon which relief can be granted.

**II.    Discussion**

    **A.    Legal Standards Governing Sufficiency of Civil Complaints**

This Court has a statutory obligation to conduct a preliminary review of *pro se* complaints brought by plaintiffs given leave to proceed *in forma pauperis* in cases which seek redress against government officials. See 28 U.S.C. § 1915(e)(2)(B)(ii). Specifically, the Court must assess whether a *pro se* complaint fails to state a claim upon which relief may be granted, since Rule 12(b)(6) of the Federal Rules of Civil

Procedure provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In addition, when reviewing *in forma pauperis* complaints, 28 U.S.C. § 1915(e)(2)(B)(ii) specifically enjoins us to "dismiss the complaint at any time if the court determines that . . . the action . . . fails to state a claim upon which relief may be granted." With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (12007) continuing with our opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the Court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald

5

assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id. In keeping with the principles of Twombly, the Supreme Court underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, __U.S. __, 129 S.Ct. 1937 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1950. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949. Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 1950.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

> (a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional

support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

In our view, these pleading standards apply to all aspects of the Court's threshold analysis of a complaint's legal sufficiency. Thus, we will apply this analysis both when assessing the adequacy of the factual assertions set forth in the complaint, and when examining whether a complaint names proper parties to the lawsuit.

### B. **Mr. Siluk's Complaint Fails to State a Claim Upon Which Relief Can be Granted**.

In this case Mr. Siluk's *pro se* amended complaint is subject to dismissal for failure to state a claim upon which relief can be granted. The initial review of the Plaintiff's complaint has identified the following deficiencies in this pleading.

#### (1) **The Rooker-Feldman Doctrine Bars This Court From Reviewing State Court Child Custody Decisions**

This matter arises out of child support litigation that began in 2002 and concluded in 2010. Given these lengthy state court proceedings spanning the past decade, which have held that Mr. Siluk may not recover these disputed funds from Ms. Merwin and the Perry County Domestic Relations Office, this complaint fails because we lack subject matter jurisdiction over the issues raised by Siluk, which necessarily invite a federal court to review, re-examine and reject state court rulings in a state case.

This we cannot do. Indeed, the United States Supreme Court has spoken to this issue and has announced a rule, the Rooker-Feldman doctrine, which compels federal district courts to decline invitations to conduct what amounts to appellate review of state trial court decisions. As described by the Third Circuit:

> That doctrine takes its name from the two Supreme Court cases that gave rise to the doctrine. Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). The doctrine is derived from 28 U.S.C. § 1257 which states that "[f]inal judgments or decrees rendered by the highest court of a state in which a decision could be had, may be reviewed by the Supreme Court....". See also Desi's Pizza, Inc. v. City of Wilkes Barre, 321 F.3d 411, 419 (3d Cir.2003). "Since Congress has never conferred a similar power of review on the United States District Courts, the Supreme Court has inferred that Congress did not intend to empower District Courts to review state court decisions." Desi's Pizza, 321 F.3d at 419.

Gary v. Braddock Cemetery, 517 F.3d 195, 200 (3d Cir. 2008).

Because federal district courts are not empowered by law to sit as reviewing courts, reexamining state court decisions, "[t]he Rooker-Feldman doctrine deprives a federal district court of jurisdiction in some circumstances to review a state court adjudication." Turner v. Crawford Square Apartments III, LLP,, 449 F.3d 542, 547 (3d Cir. 2006). Cases construing this jurisdictional limit on the power of federal courts have quite appropriately:

> [E]mphasized the narrow scope of the Rooker-Feldman doctrine, holding that it "is confined to cases of the kind from which the doctrine acquired

9

>its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."[Exxon Mobil Corp. v. Saudi Basic Industries Corp.], 544 U.S. at 284, 125 S.Ct. at 1521-22; see also Lance v. Dennis, 546 U.S. 459, ----, 126 S.Ct. 1198, 1201, 163 L.Ed.2d 1059 (2006)

Id.

However, even within these narrowly drawn confines, it has been consistently recognized that the Rooker-Feldman doctrine prevents federal judges from considering civil rights lawsuits which seek to re-examine state domestic relations court rulings that are presented "by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced." Kwasnik v. Leblon, 228 F. App'x 238, 242 (3d Cir. 2007). In such instances, the federal courts have typically deferred to the state court domestic relations decisions, and rebuffed efforts to use federal civil rights laws to review, or reverse, those state court rulings. See, e.g., Marran v. Marran, 376 F.3d 143 (3d. Cir. 2004); Kwasnik 228 F. App'x 238, 242; Smith v. Department of Human Services, 198 F. App'x 227 (3d Cir. 2006); Rose v. County of York, No. 05-5820, 2007 WL 136682 (E.D. Pa. Jan. 12, 2007).

This settled case law applies here, and precludes us from indulging in Siluk's effort to reverse the judgment of the state courts in this domestic relations matter. Therefore his complaint must be dismissed.

### (2) **The Eleventh Amendment to the United States Constitution Bars This Lawsuit Against this State Agency**

In addition, this complaint also runs afoul of basic constitutional and statutory rules limiting lawsuits against state agencies and officials. First, as a matter of constitutional law, the Eleventh Amendment to the Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the . . . States . . . .", U. S. Const. amend XI. By its terms, the Eleventh Amendment strictly limits the power of federal courts to entertain cases brought by citizens against the state and state agencies. Moreover, a suit brought against an individual acting in his or her official capacity constitutes a suit against the state and therefore also is barred by the Eleventh Amendment. Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989).

Pursuant to the Eleventh Amendment, states, state agencies and state officials who are sued in their official capacity are generally immune from lawsuits in federal courts brought against them by citizens. Seminole Tribe v. Florida, 517 U.S. 44, 54 (1996). The constitutional protections afforded to the states and the state court system under the Eleventh Amendment also expressly apply to the state agencies that are integral parts of Pennsylvania's unitary court system. These court agencies, which also enjoy immunity from lawsuit under the Eleventh Amendment, include the various

county common pleas court domestic relations agencies which are defined by statute as arms of the state courts, and institutions of state government. See, e.g., Walters v. Washington County, No. 06-1355, 2009 WL 7936639 (W.D. Pa. March 23, 2009);Van Tassel v. Lawrence County Domestics Relations Section, No. 09-266, 2009 WL 3052411 (W.D. Pa. Sept. 22, 2009). Absent an express waiver of the immunity established by the Eleventh Amendment, all of these agencies, and their employees who are sued in their official capacities, are absolutely immune from lawsuits in federal court. Moreover as a matter of statutory interpretation, the plaintiff cannot bring a damages action against these state agencies or state officials in their official capacity since it is well-settled that a state, a state agency, or a state official acting in an official capacity is not a "person" within the meaning of 42 U.S.C. §1983. Will v. Michigan Dep't. of State Police, 491 U.S. 58, 71 (1989).

### (3) The Doctrine of Judicial and Quasi-Judicial Immunity Also Bars These Claims

Furthermore, to the extent that the complaint seeks to hold state judicial agency employees like Domestics Relations agency staff personally liable for damages, it is well-settled that these officials are also individually cloaked with immunity from liability. The United States Supreme Court has long recognized that those officials

performing judicial, quasi-judicial, and prosecutorial functions in our adversarial system must be entitled to some measure of protection from personal liability for acts taken in their official capacities. In order to provide this degree of protection from liability for judicial officials, the courts have held that judges, Mireless v. Waco, 502 U.S. 9, 13 (1991); prosecutors, Imbler v. Pachtman, 424 U.S. 409, 427 (1976); and those who perform adjudicative functions, Imbler, 424 U.S. at 423 n. 20 (grand jurors); Harper v. Jeffries, 808 F.2d 281, 284 (3d. Cir. 1986)(parole board adjudicators); are entitled to immunity from personal liability for actions they take in our adversarial system of justice. The scope of these protections extend beyond judges and prosecutors to those who take discretionary actions at the direction of the courts. As this court has observed:

> Quasi-judicial officers, who act in accordance with their duties or at the direction of a judicial officer, also are immune from suit. *See Gallas,* 211 F.3d at 772-73 (court administrator entitled to immunity for release of information ordered by a judge); Lockhart v. Hoenstine, 411 F.2d 455, 460 (3d Cir.1969) (holding that prothonotary, acting under court direction, was immune from suit). The doctrine of absolute quasi-judicial immunity has been applied to court support personnel due to "the danger that disappointed litigants, blocked by the doctrine of absolute immunity from suing the judge directly, will vent their wrath on clerks, court reporters, and other judicial adjuncts." Kincaid v. Vail, 969 F.2d 594, 601 (7th Cir.1992). See also Johnson v. Kegans, 870 F.2d 992, 995 (5th Cir.1989) ("Prosecutors and other necessary participants in the judicial process enjoy quasi-judicial immunity as well.").Quasi-judicial absolute immunity is available to those individuals, such as Defendants Kline and Brewer, who perform functions closely associated with the judicial

> process. Marcedes v. Barrett, 453 F.2d 391 (3d Cir.1971) (holding that quasi-judicial immunity applied to clerk of courts, an administrative assistant to the president judge and a court reporter); Henig v. Odorioso, 385 F.2d 491, 494 (3d Cir.1967) (holding that judiciary employees executing judicial orders are immune from suit); Davis v. Philadelphia County, 195 F.Supp.2d 686 (E.D.Pa.2002) (holding that quasi-judicial immunity applies to court staff, such as clerks of judicial records and court reporters).

Stout v. Naus, 09-390, 2009 WL 1794989, at 3 (M.D. Pa. 2009)(McClure, J.).

These longstanding common law immunities for judicial, quasi-judicial, and prosecutorial officials directly apply here and prevent the plaintiff from maintaining this civil action for damages against the individual defendant he has named in his complaint. This immunity embraces court personnel like Domestic Relations staff, who perform discretionary functions under the guidance and direction of the courts. Indeed, courts have specifically held that Domestics Relations agency staff are entitled to assert this immunity in civil rights actions. For example, in Slawek v. White, No. 91-1164, 1992 WL 68247, at 3 (E.D. Pa. 1992), the court conferred this immunity on domestic relations personnel, noting that such immunity was consistent with case law and stating:

> In Hamill v. Wright, 870 F.2d 1032, 1037 (5th Cir.1989), a director of the domestic relations office was declared to be "entitled to full prosecutorial immunity from damages because his decision to bring contempt proceedings and his participation in those proceedings was pursuant to his quasi-judicial duties." (citing Imbler v. Pachtman, 424

> U.S. 409, 96 S.Ct. 984 (1976)). Here, these Domestic Relations officials' conduct, under the facts relied upon by the Plaintiff, in continuing to prosecute the paternity claim was pursuant to Pennsylvania law and Judge Salas' directives, and as such are entitled to immunity.

Slawek, 1992 WL 68247, at 4. See, e.g., Buchanan v. Gay, 491 F. Supp.2d 483 (D. Del. 2007); White v. Green, No. 09-1219, 2009 WL 2412490 (E.D. Pa. 2009); Johnson v. Lancaster County Children and Youth, No. 92-7135, 1993 WL 245280 (E.D. Pa. 1993).

Thus, entirely aside from the jurisdictional flaws in this case, and the constitutional immunity conferred upon the state by the Eleventh Amendment, this action fails against any individual defendants named in the amended complaint because the individual defendants are entitled to immunity from personal liability for their official actions in the judicial system.

We recognize that in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, see Fletcher-Hardee Corp. v. Pote Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless it is clear that granting further leave to amend would be futile, or result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). In this case, we find that the plaintiff has failed to state a viable civil rights cause of action, and the factual and legal grounds proffered in support of the complaint make it clear that he

15

has no right to relief, granting further leave to amend would be futile or result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). Therefore it is recommended that the complaint be dismissed without further leave to amend.

While federal law compels this ruling we recognize the concerns that motivate Siluk in bringing this action. We are simply unable to grant him the relief he seeks. A federal district court cannot act as a state appellate court in domestic relations matters. Rather, Mr. Siluk should understand that he must turn to the state trial and appellate courts to address these concerns. Mr. Siluk should also be guided by the rulings of those courts, rulings which strongly suggest that his avenue of relief in any state court litigation must be against the Department of Public Welfare, and not the defendants named in this action.

### III.  RECOMMENDATION

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the plaintiff's complaint be dismissed for the failure to state a claim upon which relief can be granted.

The plaintiff is further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen

(14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 16th day of September, 2011.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge
